UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

IN RE: TOWER AUTOMOTIVE, INC.,

                06 Civ. 2105 (RWS)

                O P I N I O N

------------------------------------X

A P P E A R A N C E S:

       Attorneys for Plaintiff

       KIRKLAND & ELLIS, LLP
       153 EAST 53RD STREET
       NEW YORK, NY 10022
       BY: LISA G. LAUKITIS

       Attorneys for Defendant

       HOGAN & HARTSON
       875 THIRD AVENUE
       NEW YORK, NY 10022
       BY: IRA S. GREENE

Sweet, D.J.,

      Defendant Federal Insurance Company ("Federal") has filed objections to the Order Proposing Findings and Recommendations to the District Court (the "Order") issued by the Honorable Allan L. Gropper of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on December 19, 2005.

1

The Order recommended that this Court should grant the summary judgment motion of Tower Automotive, Inc. ("Tower") on the issue of Federal's obligation to pay the defense costs of certain ERISA actions currently pending before the Court. For the reasons stated below, the objections will be overruled, and summary judgment will be granted in favor of Tower.

## Prior Proceedings

Tower commenced this action by the filing of a complaint on April 5, 2005 (the "Complaint"), seeking monetary damages and a declaration that Federal is obligated to provide insurance coverage for lawsuits filed against certain officers, directors, and employees overseeing Tower's employee benefit plans.

On May 18, 2005, Federal filed a motion to dismiss the Complaint, and Tower filed a motion for summary judgment. On September 19, 2005, the Bankruptcy Court issued an opinion denying the motion to dismiss and granting summary judgment in favor of Tower (the "September 19 Opinion").

Federal filed a motion to reconsider on September 29, 2005. In an opinion dated November 9, 2005 (the "November 9 Opinion"), the Bankruptcy Court granted Federal's motion in part, but reaffirmed the grant of summary judgment in favor of Tower.

2

The Bankruptcy Court issued its Proposed Findings and Recommendations on December 19, 2005, pursuant to 28 U.S.C. § 157(c)(1), submitting the September 19 Opinion and the November 9 Opinion as proposed findings of fact and conclusions of law. Federal filed its objections to the Proposed Findings and Recommendations on January 6, 2006 (the "Objections"). Tower filed a response to the Objections on January 17, 2006 (the "Response"), and Federal filed a designation of record concerning its Objections on January 23, 2006. The case was assigned to this Court and marked fully submitted on April 4, 2006.

**Facts**

In November 2004, Federal issued Fiduciary Liability Policy No. 8151-5430 to Tower for the Policy Period October 14, 2004 to October 15, 2005 (the "Policy") (attached to the Complaint as Exhibit A). Under the Policy, Federal agreed to pay "Loss on Account of any Fiduciary Claim" made against Tower and its officers and directors, as Insureds. (Policy ¶ 1, at 3.)

The Policy defines "Loss" as "the amount that any Insured becomes legally obligated to pay on account of any covered Claim, including . . . Defense Costs." (Id. ¶ 3, at 5.) A "Fiduciary Claim" is defined by the Policy, in relevant part, as

    (a) a written demand for monetary damages or non-monetary relief;

3

> (b) a civil proceeding commenced by the service of a complaint or similar proceeding;
>
> (c) a criminal proceeding commenced by a return of an indictment or information; [or]
>
> (d) a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal investigative order or similar document . . .
>
> . . .
>
> against any Insured for a Wrongful Act . . . .

(Id. ¶ 3, at 4.) A "Wrongful Act" is defined by the Policy to include

> (a) any breach of the responsibilities, obligations or duties imposed by ERISA upon fiduciaries of the Sponsored Plan in their capacity as such fiduciaries;
>
> (b) any negligent act, error or omission in the Administration of any Plan committed, attempted, or allegedly committed or attempted by an Insured in the Insured's capacity as such; or
>
> (c) any other matter claimed against an Insured solely by reason of the Insured's service as a fiduciary of any Sponsored Plan.

(Id. ¶ 3, at 8.) The term "Plan" is defined as either a "Sponsored Plan" or "any government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for Employees" (Id. ¶ 3, at 6), while "Sponsored Plan" is defined in relevant part as

> (a) any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each are defined in ERISA, which is operated solely by [Tower] or jointly by [Tower] and a labor organization solely for the benefit of the Employees or Executives of [Tower] . . . ; [and]

4

> (b) any other employee benefit plan or program not subject to ERISA which is sponsored solely by [Tower] for the benefit of the Employees or Executives . . . .

(Id. ¶ 3, at 7).

The Policy contains several exclusions, including a "Securities-Based Claims Exclusion" (the ※Exclusion※), the construction of which is now at issue. The Exclusion provides that

> (1) The term "Securities-Based Claim" means any Claim that is, in whole or in part, based upon, arising from, or in consequence of:
>
>> (a) any actual or alleged disclosure or nondisclosure of information relating to the value of securities issued by [Tower] or relating to [Tower's] financial or operational performance, condition or prospects; or
>>
>> (b) any Insured authorizing, allowing, requiring or not prohibiting (i) the acquisition or holding by, or contribution to, any Plan of any securities issued by [Tower], or (ii) any participants in or beneficiaries of any Plan acquiring or holding in, or contributing to, their Plan accounts any securities issued by [Tower].
>
> (2) No coverage will be available under this coverage section for any Securities-Based Claim if such Securities-Based Claim, or any other written demand or civil or administrative proceeding against an Insured, seeks or has sought relief for any purchaser or holder of securities issued by [Tower] who is not a Plan participant or beneficiary based upon, arising from, or in consequence of any Wrongful Acts, facts, circumstances or situations described in 1(a) or 1(b) above or any related Wrongful Acts, facts, circumstances or situations.
>
> (Policy, Endorsement 2.)

5

On February 2, 2005, Tower filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code. Over the next two months, six actions were filed in this District against Tower and certain of its officers, directors and employees, alleging violations of ERISA related to Tower's employee benefit plans (the "ERISA Actions"). Over the same time period, five actions were filed in this District alleging that certain of Tower's officers violated the Securities Exchange Act (the "Securities Actions"). Both types of actions alleged in part that Tower's officers made false or misleading statements about the company's liquidity position.

Tower timely notified Federal of the ERISA Actions and sought coverage under the Policy for, <u>inter alia</u>, the costs of defending the ERISA Actions. On March 25, 2005, Federal denied coverage for the ERISA Actions on the ground that the filing of the Securities Actions had triggered the Exclusion, thereby barring coverage. Tower subsequently filed the Complaint in this action.

### The Applicable Standards

In a non-core proceeding such as this, a bankruptcy court's proposed findings of fact and conclusions of law are subject to <u>de novo</u> review by the district court. 28 U.S.C. §

6

157(c)(1);[1] see also Cent. Vt. Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The parties agree that this proceeding is governed by Michigan law, which provides that the interpretation and application of an insurance policy is a question of law that is reviewed de novo by an appellate court. City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool, 702 N.W.2d 106, 112 (Mich. 2005).

## Discussion

The Bankruptcy Court held in the September 19 Opinion that further development of the factual record was necessary before a determination could be made as to the applicability of the

---

[1] The statute provides that:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

7

Exclusion to the ERISA Actions. However, noting that "an insurer's duty to defend is broader than its duty to indemnify" (September 19 Opinion at 9), the Bankruptcy Court concluded that summary judgment should be granted in favor of Tower "requiring Federal to provide a defense to the ERISA Actions at least to the date of a determination as to whether the exclusion applies." (Id. at 11.)

In its Objections, Federal has argued (1) that the Exclusion bars coverage for the ERISA Actions as a matter of law, and (2) that under Michigan law an insurer has no duty to defend where coverage is barred by an exclusion to the policy.

## The Exclusion Does Not Bar Coverage for the ERISA Actions

Under Michigan law, "[a]n insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 566 (1992). Like any other contract, an insurance contract should be read as a whole and meaning should be given to all terms. Id. "Any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." Raska v. Farm Bureau Mut. Ins. Co. of Mich., 412 Mich. 355, 362-63 (1982). "In general, exclusionary clauses are construed against the insurer. But, `[t]his Court cannot create ambiguity where none exists . . . . Clear and specific

8

exclusions must be given effect.'" <u>Pac. Employers Ins. Co. v. Mich. Mut. Ins. Co.</u>, 549 N.W.2d 872, 875 (Mich. 1996).

As noted above, paragraph 2 of the Exclusion states that

> No coverage will be available under this coverage section for any Securities-Based Claim if such Securities-Based Claim, or any other written demand or civil or administrative proceeding against an Insured, seeks or has sought relief for any purchaser or holder of securities issued by [Tower] who is not a Plan participant or beneficiary based upon, arising from, or in consequence of any Wrongful Acts, facts, circumstances or situations described in 1(a) or 1(b) above or any related Wrongful Acts, facts, circumstances or situations.

(Policy, Endorsement 2.) There is no dispute that the ERISA Actions are Securities-Based Claims pursuant to paragraph 1(a) of the Exclusion. It is also undisputed that the Securities Actions constitute other civil proceedings that seek relief for purchasers of Tower securities who are not Plan participants based upon "facts, circumstances or situations described in 1(a)." (<u>Id</u>.)

The Bankruptcy Court correctly characterized Federal's argument as relying on the phrase "or any other written demand or civil or administrative proceeding against an Insured." Federal has argued that this clause should be read in the disjunctive with regard to the Securities-Based Claims. This reading leads to only one plausible conclusion: there is no coverage for Securities-Based Claims if "any other written demand or civil or administrative proceeding" seeks relief for non-Plan participants based upon facts

9

described in paragraph 1(a) of the Exclusion. Substituting undisputed terms, the essence of Federal's reading of the paragraph is that there is no coverage for the ERISA Actions once the Securities Actions have been filed. Textually, this is "a reasonable reading of the critical sentence." (September 19 Opinion at 7.)

Read in light of the entire Policy, however, Federal's reading is less convincing. Because securities claims are frequently asserted by public shareholders who are not Plan participants or beneficiaries, the practical effect of Federal's reading of the Exclusion is to bar any coverage whatsoever for securities claims asserted against Tower's ERISA Plan fiduciaries. Given that coverage for securities claims is necessarily a core element of the coverage grant in a fiduciary policy, this result would be counterintuitive, to say the least.

While Federal is correct to note that parties to an insurance contract may agree on any lawful limitations or exclusions they choose, "[a]n insurer has a duty to clearly express the limitations on coverage in the insurance policy." Kast v. Citizens Mut. Ins. Co., 336 N.W.2d 18, 19 (Mich. App. 1983). If it had actually been the parties' mutual intent to provide no coverage for securities claims against Tower's ERISA Plan fiduciaries, that result could have been achieved by simply stating: "No coverage will be available under this coverage section for any Securities-

10

Based Claim."  Federal's reading would effectively make mere surplus of the entire conditional phrase that follows, a result contrary to settled Michigan law that an insurance policy "will be construed so as to give effect to every word or phrase so far as practicable."  Schiff v. Auto Ins. Co., 287 N.W. 920, 921 (Mich. 1939).

Tower offers a competing interpretation.  Under its reading, the phrase "any other written demand or civil or administrative proceeding" refers to the claim for which coverage is sought, rather than to any distinct proceeding initiated by other parties.  Thus, the section would exclude liability only if Tower sought coverage for a claim -- including written demands for civil or administrative proceeding -- brought by non-participants.

Tower's interpretation is reasonable.  While perhaps inartful, such a reading is plausible as a matter of grammatical syntax.  The clause at issue is set off by commas as a parenthetical to the antecedent term, "such Securities-Based Claim."  The inclusion of the word "such" indicates that "such Securities-Based Claim" explicitly refers back to the beginning of the sentence, which deals with the claim for which coverage is sought.  This reading prevents the parenthetical clause from "swallow[ing] up" the main clause and instead modifies it to ensure exclusion of coverage for any Securities-Based Claim, no matter the forum in which it is filed.  (November 9 Opinion at 4.)

11

Interpreting the conclusion in light of the policy as a whole provides a more compelling basis for Tower's interpretation. As the Bankruptcy Court noted, tying coverage of the ERISA claims to the "entirely unpredictable development" of the filing of a Securities-Based Claim against any one of ERISA defendants in any jurisdiction for any reason defies logic. (September 19 Opinion at 7.) Tower's more specific and nuanced interpretation comports much more closely with the purpose of the policy, which is to insure Tower and its officers against suits stemming from administration of the company's employee benefit plans.

Each party's interpretation of the exclusion is reasonable, though Tower's much more closely adheres to the policy as a whole. When such ambiguity exists, under Michigan law the exclusionary clause must be read against the insurer. See Raska, 412 Mich. at 362-63. Furthermore, resolution of this issue is appropriate on summary judgment, as the exclusion's effect is a question of law. See Grosse Pointe Park, 702 N.W.2d at 112. Therefore, summary judgment in favor of Tower is appropriate.

It is so ordered.

New York, NY
April 16, 2007

ROBERT W. SWEET
U.S.D.J.

12